**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 208, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, and Local 123, Furniture Workers, Upholsterers & Woodworkers Union, Respondents.**

No. 17010.

United States Court of Appeals
Ninth Circuit.

June 14, 1961.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, William J. Avrutis and Allison W. Brown, Jr., Washington, D. C., for petitioner.

Margolis & McTernan, Lewis Garrett & Lionel Richman, Los Angeles,. Cal., for respondents.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

This case is before this court on the petition of the National Labor Relations Board for the enforcement of its order issued against respondents on the ground that they committed an unfair labor practice in violation of 29 U.S.C.A. § 158(b) (2).[1]

1. "(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership \* \* \*."
29 U.S.C.A. § 158(a) "It shall be an unfair labor practice for an employer—

\* \* \* \* \*

It is conceded that respondents picketed Sierra Furniture Company, hereinafter Sierra, commencing on September 24, 1958, and that the picketing continued until February 6, 1959. The sole issues before this court are:

1. Did the respondents represent a majority of the employees of Sierra at the time of such picketing?

2. If they did not, did respondents by their picketing seek to coerce Sierra into executing a union-shop contract with them?

The Board found against respondents on both of these issues, determining that they did not represent a majority of the employees during such picketing and that they did seek to coerce Sierra into executing a union-shop contract.

The record shows that in July of 1958 Local 123, Furniture Workers, Upholsterers and Woodworkers Union, hereinafter 123, was attempting to organize Sierra's plant. On July 16th Gus O. Brown, 123's business agent, wrote Sierra claiming that 123 had a majority of the company's workers and asking for collective bargaining recognition. However, at this time 123 represented only 28 of the 60 Sierra employees. The organizational efforts continued, and by July 21st 33 employees had signed cards for 123. Brown again called Sierra, but this time stated "that we were making the demand on behalf of the Local 123 and Local 208 [2] jointly." On July 22nd Brown wrote a letter to the same effect.[3] Sierra refused to recognize the two unions jointly. The union cards signed by the workers stated only that they authorized 123 to bargain for them; there was nothing on the cards to indicate that the employees also were willing to be represented by 208.

On July 22nd Sierra was struck and picketed by the respondents acting jointly, but less than a majority of Sierra employees engaged in the strike and picketing. On July 31st 123 advised Sierra in writing that it disclaimed "any and all interest in representing the employees of the Sierra Furniture Company." On or about the same date 208 advised Sierra of 123's disclaimer and asserted its own individual claim of representation. On August 6th Sierra executed a contract with 208, which contract included a union-shop agreement. The picketing stopped.

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, which-ever *is the later,* (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made and has at the time the agreement was made or within the preceding twelve months received from the Board a *notice of compliance* with section 159(f), (g), (h) of this title * * *."

29 U.S.C.A. § 159(a) "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *."

2. Local 208, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,—hereinafter in this opinion referred to as 208.

3. The body of the letter reads as follows: This will confirm the telephone conversation made to you yesterday, wherein I advised you that we have revised our request for recognition to the above-named Company, in that the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 208, and our Local, are jointly requesting recognition on behalf of all maintenance and production workers excluding office employees, salesmen, guards and supervisors.

On August 25th an employee of Sierra filed charges against Sierra and 208, alleging in substance that Sierra and 208 had violated the National Labor Relations Act by executing a union-shop contract at a time when 208 did not represent a majority of Sierra employees. On September 3rd Sierra notified 208 that because an investigation by Board agents showed that 208 did not represent a majority of Sierra employees, it was Sierra's position "that the agreement of August 6, 1958, is completely invalidated, both the purpose and consideration therefor having been illegal." The trial examiner found that on September 3rd Sierra "broke off recognition of Local 208 and at no time thereafter recognized the Respondents either jointly or individually as the bargaining representative of its employees." On September 3rd 123 notified Sierra that it was withdrawing its "disclaimer" of July 31st. Thereafter various charges were filed with the Board by 123 and 208, a discussion of which is not necessary to this decision.

On September 22nd 208 by letter demanded that Sierra meet with the respondents "(1) to ascertain and definitely fix the position of Sierra Furniture with respect to the above captioned agreement [August 6 contract] to the end that full compliance therewith may be had (Local 208 does, of course, insist that the labor contract in question is wholly valid and enforceable), and (2) to negotiate another and different bargaining agreement if such be necessary and desirable in the premises." [4]

When the deadline of 5 p. m., Tuesday, September 23, which was set out in the letter, was not met by Sierra, respondents jointly on September 24th began picketing the Sierra plant.[5] The picket signs that were displayed bore the names of both 123 and 208 and said in substance that Sierra was unfair to organized labor. Representatives of the parties met on September 25th without agreement,

4.           "September 22, 1958
"Sierra Furniture Company
"330 West Avenue 26
"Los Angeles, California
     "Re:  August 6, 1958 labor contract between
              "Sierra Furniture and Teamsters' Local 208
"Attention: R. Lewis
"Gentlemen:
"Teamster's Local 208 and Furniture Workers Local 123 hereby respectfully demand that Sierra Furniture immediately meet for purposes of collective bargaining with representatives of these Locals for the following purposes, to wit:
     "1) to ascertain and definitely fix the position of Sierra Furniture with respect to the above captioned agreement to the end that full compliance therewith may be had (Local 208 does, of course, insist that the labor contract in question is wholly valid and enforceable), and
     "2) to negotiate another and different bargaining agreement if such be necessary and desirable in the premises.
Please take notice that Local 208 will resort to economic sanctions against Sierra Furniture on or after Sep. 24, 1958 in event Sierra Furniture fails to meet with us as above requested prior to 5:00 P.M. Tuesday, September 23, 1958. Despite our position that the August 6, 1958 contract is valid and enforceable and that we are entitled to full compliance therewith, the purpose of the economic sanctions, if such become necessary, will not be to enforce the August 6, 1958 labor contract in question. What we do insist upon, however, is that the Company immediately meet and negotiate with us either concerning the matter of enforcement of the August 6th contract or to negotiate a new contract in its place and stead.

The object of the imposition of economic sanctions, if such become necessary, will be to insure that necessary bargaining takes place in the premises. We stand ready to meet with Sierra Furniture representatives at any time prior to 5:00 P.M. on Tuesday, September 23, 1958 and at any reasonable place on said date.
               "Yours truly,
               "Local Freight Drivers Union,
               "Local 208
     "/s/ JOHN W. FILIPOFF,
               "Secretary-Treasurer
"JWF:F:DR
     "cc Furniture Workers, Local 123"

5.  There were at this time 78 employees on the Sierra payroll, and 50 of them continued to work in spite of the picket line.

and the picketing by respondents continued. Apparently there were no further meetings between the parties until January 6, 1959.[6] The picketing by respondents stopped on February 6th, when a temporary restraining order was obtained by Sierra. Respondents then advised Sierra by telegram that the strike had been terminated and requested the reemployment of the strikers. In January, 1959, respondents had distributed pamphlets and displayed signs at places where customers and potential customers of Sierra were assembled, appealing to said persons not to patronize Sierra while the strike was in progress.

On January 20, 1959, the acting regional director of the Board, upon the charges of unfair labor practices theretofore filed by Sierra against respondents, issued a complaint and set the hearing for February 16, 1959. An amendment to this complaint was filed on January 26, 1959.

We shall first consider the question of whether respondents represented a majority of Sierra's employees at the time of the picketing.

It is conceded that on July 16, 1958, less than a majority of Sierra employees had signed cards authorizing 123 to represent them and that at that time none of the employees had signed cards authorizing 208 to represent them. On July 21st 33 employees or more than a majority had signed cards authorizing 123 to represent them; but by that time 123 had changed its position, and on that day and the following day 123 both orally and in writing notified Sierra that 208 and 123 were jointly requesting recognition on behalf of all maintenance and production workers.[7] There is no evidence that at that time the Sierra employees who had signed cards to be represented by 123 had any desire whatever

to be represented by 208. The Sierra Company refused to bargain with 123 and 208 jointly, and the Board found "that the refusal, if any, was a refusal to bargain with the Locals acting jointly [Footnote omitted]." The respondents attempted to show that there was a joint organizational drive on the part of 123 and 208, and that by signing cards for 123 the employees were actually designating 123 and 208 together. In considering the testimony on this point the trial examiner aptly observed:

It is possible that earlier than July 21, 123 was *supported* by 208 in its organizational drive but if 208 were actually seeking joint representation with 123 in the earlier period of 123's efforts, obviously, I think, Sierra employees would not have been solicited to sign only 123's authorization cards, and Brown's recognition demand of July 16 or 17 would have specifically spelled out the fact that joint recognition was being sought. Had this been done there would have been, and could have been, no occasion for his letter to Feldman dated July 22.

Also the evidence does not show that 123 or 208 either separately or jointly represented a majority of Sierra employees on September 24th or at any time later during the strike. A majority had not signed cards for either union, and a substantial majority continued to work throughout the strike.[8] We hold that the evidence does not support the claim of the respondents.

We shall next consider the finding of the Board that respondents by their picketing sought to coerce Sierra to execute a union-shop contract with them.

It must be remembered that the contract of August 6, 1958, between Sierra and 208 contained a union-shop agree-

6. Reybock Lewis, president of Sierra, testified that at that meeting Brown had stated "he thought that if we could make a statement to our employees that we had no objections to them joining 208 or 123, or any other union, that, and he

said, although he didn't have a majority at that time, that he felt in a couple of days that with that cooperation he could have a majority."

7. See footnote 3.

8. See footnote 5.

ment. In the letter of September 22nd written by 208 to Sierra, 208 demanded that "full compliance therewith may be had," referring to the August 6th agreement. There was, as the Board pointed out in its decision, uncontroverted testimony that on September 25th, when the parties met after the strike had been called, "Respondents stated that they could not give up union-security." More than three months elapsed during which respondents did not make any statement of a change in their position. At one meeting in January, 1959, the respondents expressed willingness to extend the 30-day union-security clauses in the contract to 90 days. Sierra's attorney testified that the dropping of the union-security demands was conditioned on Sierra's discontinuing its various actions against them, particularly as affecting a proceeding then pending in which Sierra was seeking an injunction against the unions.

In its decision the Board based its finding of a § 158(b) (2) violation on—

"1) the Respondents' statement at the September 24th meeting that they could not give up union-security; 2) their picketing of the Company for in excess of 3 months without any indication of a shift from that position which, under such circumstances, must be presumed to have persisted; and 3) their failure to indicate until January 6 that they would negotiate the matter and might modify their union-security demands.

"We are persuaded by such facts and sequence of events and by Brown's statements in the courthouse of January 30 that the Respondents, by their picketing, sought to coerce Sierra into executing a union-shop contract. By so doing, while representing only a minority of Sierra's employees, they violated Section 8(b) (2) of the Act."

Section 158(b) (2) provides that it is an unfair labor practice for a labor organization "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * *." In N. L. R. B. v. International Union of Operating Engineers, 9 Cir., 1956, 237 F.2d 670, 673, this court said:

"[A] literal reading of the section requires only a showing that the union caused or attempted to cause the employer to engage in conduct which, if committed, would violate § 158(a) (3)."

By Section 158(a) (3) (i) the employer is forbidden to enter into a union-shop contract with a labor organization unless such labor organization "is the representative of the employees as provided in Section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made." In the instant case neither 123 nor 208 qualified as the representatives of Sierra's employees, and by strike action and picketing they were attempting to cause Sierra "to discriminate" against its employees. This was therefore a violation of § 158(b) (2) as found by the Board.

We find that upon the whole record there is substantial evidence to support the finding and order of the Board as to the violation of 29 U.S.C.A. § 158(b) (2).

Let so much of the Board's order as is based upon respondent's violation of Section 158(b) (2) be enforced.[9]

9. The Board also found that the picketing was coercive and in violation of 29 U.S. C.A. § 158(b) (1) (A), and its order provided remedy accordingly. However, in view of the recent decision of the Supreme Court in N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 1960, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710, holding that picketing for recognition by a minority union is not violative of the Act, the Board does not seek enforcement of such portions of its order as are based upon its finding of a violation of that section.